## PEOPLE *v.* WURTZ.

1. CRIMINAL LAW—ROBBERY ARMED—PLEA OF GUILTY—EXAMINATION BY TRIAL COURT.

   Compliance with court rule requirement as to examination of accused by trial judge before accepting plea of guilty at arraignment on charge of robbery armed *held*, shown by record wherein it appears accused was advised of his right to plead guilty, or not guilty, or not at all, of his right to a jury trial, and to counsel either of his own choosing or by appointment of the court, advised the court he had not been mistreated by anyone since arrest, had not been promised leniency, and that accused understood the consequence of his action although not advised he could receive term of life imprisonment meted out (CL 1948, § 750.529; Court Rule No 35A [1945, 1947]).

2. SAME—PLEA OF GUILTY—EXAMINATION BY TRIAL COURT.

   The form and manner of the examination by a trial judge of an accused before accepting a plea of guilty has not been prescribed but is left to the discretion of the judge to be exercised by him in the manner best suited to the parties and the offense (Court Rule No 35A [1945, 1947]).

3. COURTS—SUPREME COURT OF THE UNITED STATES—PRECEDENTS.

   An opinion of the Supreme Court of the United States outlining due process in accepting a plea of guilty of one accused of crime and tried in a Federal court would not be binding upon the States, where the opinion does not express a majority viewpoint and because it is a criminal prosecution in a Federal court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 14 Am Jur, Criminal Law §§ 270, 271.
[3] 14 Am Jur, Courts § 118.
[4, 5] 14 Am Jur, Criminal Law §§ 286, 287.
[6] 14 Am Jur, Criminal Law §§ 167, 173.

4. CRIMINAL LAW—PLEA OF GUILTY—FAILURE TO ADVISE AS TO SEVERITY OF SENTENCE.

Defendant who pleaded guilty to charge of robbery armed and was given a penetrating and comprehensive examination of all the circumstances under which he entered his plea is not given permission to withdraw plea of guilty because a life sentence was imposed, merely because the trial judge had not advised him that the sentence could be so severe, where the manner in which the arraignment was conducted did not disclose defendant suffered a violation of due process (CL 1948, § 750.529).

5. COURTS—PLEA OF GUILTY—MENTAL COMPETENCY AT TIME OF ARRAIGNMENT—EVIDENCE.

Record in prosecution for robbery armed wherein defendant waived his right to counsel, pleaded guilty at arraignment, and such plea was accepted after a penetrating and comprehensive examination by the trial judge including a conversation at chambers off the record *held,* inconclusive as to state of defendant's mind at time of arraignment, where interviews by psychiatrists were held upwards of 5 years thereafter incident to motion for new trial on ground of mental incompetency at time of arraignment, and the psychiatrists were not all in accord that defendant was then mentally incompetent or could be so declared as of that time (CL 1948, § 750.529).

6. SAME—ROBBERY ARMED—NEW TRIAL—WAIVER OF COUNSEL—PLEA OF GUILTY.

New trial was properly denied defendant upwards of 5 years following acceptance of plea of guilty to charge of robbery armed, where defendant has failed to show that his waiver of counsel and plea of guilty, voluntary, informed, and intentional on the face of the record, were the result of fear, fraud, ignorance, duress, compulsion, or unfairness (CL 1948, § 750.529).

Appeal from Macomb; Carroll (Howard R.), J. Submitted Division 2 January 14, 1965, at Lansing. (Docket No. 231.) Decided June 21, 1965.

Erwin Wurtz was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,*

Prosecuting Attorney, and *Thaddeus F. Hamera,* Assistant Prosecuting Attorney, for the people.

*Karl G. Heidemann,* for defendant.

McGREGOR, J. In his brief on appeal, defendant described the circumstances of his arraignment as follows:

"Erwin Wurtz, a young man of approximately 26 years of age, was brought before Macomb county Circuit Judge Howard R. Carroll on October 2, 1957, for arraignment, on the charge of robbery armed. * * * He was not represented by counsel at the arraignment. The information charged Wurtz with having robbed Reichardt Tassie Tavern, * * * on September 28, 1957, at approximately 2:00 a.m. along with William Allen and Doris Morris. It is alleged that immediately after the three left the establishment, Mr. Reichardt notified authorities and shortly thereafter they were stopped by a Macomb county sheriff's patrol car. It is further alleged that Allen, the only one of the defendants with a gun, started firing and as a result was killed by the sheriff's deputies, and Doris Morris and Erwin Wurtz were arrested and lodged in the Macomb county jail."

Wurtz was convicted of armed robbery and sentenced to life imprisonment upon his plea of guilty made at the arraignment.

On December 19, 1962, defendant initiated an attack on his conviction, with the assistance of an attorney, by filing a motion to set aside the conviction and vacate sentence and for a new trial. The defendant contended that his waiver of counsel at arraignment was invalid on three grounds: (1) because he lacked an apprehension of the true nature of the charge, (2) because he was not informed of the range of allowable punishment for the crime

charged, and (3) because his mental condition was such that he was unable to make a valid decision.

After consideration of the defendant's prison medical record, the testimony of two psychiatrists, and other evidence presented by the defendant, the trial court entered an order, November 8, 1963, denying the motion for a new trial. This appeal is from that order.

To facilitate a full and intelligible discussion of this case, the proceedings on arraignment are set forth in full as follows:

"*Mr. McKenzie:* If the court please, this is the case of the people against Erwin Wurtz, criminal file number 6705. The defendant was duly bound over to this court to be arraigned on the information charging him with the offense of robbery armed, in violation of CL 1948, § 750.529 (Stat Ann 1954 Rev § 28.797). Defendant has failed to furnish $15,000 bond and has been committed. He stands in his own proper person before the court and has been furnished with a copy of the people's information, which information reads as follows:

Thereupon Mr. McKenzie read the information.

"*The Court:* Mr. Wurtz, the information that has just been read to you contains the charge of which you are accused.

"*The Defendant:* Yes, sir.

"*The Court:* At this time the law presumes you to be innocent and you stand before me as an innocent person. Now, you have a right to plead guilty to this; you have a right to plead not guilty to it; you have a right to not plead at all in which case we will enter a plea of not guilty; you have a right to a trial by a jury of 12 people; you have a right to have a trial by a judge, if you don't want a jury; you have a right to have an attorney represent you, an attorney of your own choosing; or if you are unable to provide a lawyer yourself and can satisfy the court that you are unable to, then the

court will appoint an attorney to represent you. You have a right to have an attorney advise you and answer any questions you want to about this before you plead. So, do you understand what I have told you?

"*The Defendant:* Yes, Your Honor.

"*The Court:* You are charged with robbery armed, that you and at least one other person did on the 28th of September, 1957, by using a gun take certain property from Nicholas Reichardt in Harrison township, Macomb county. Now, to this information charging you with robbery armed, how do you want to plead?

"*The Defendant:* To the charge of armed robbery, I plead guilty; to the statement that I was carrying a weapon this was not so. I was not armed.

"*The Court:* In Michigan, if two or more persons are together and one of them carries a gun and commits an armed robbery and if the persons with him, knowing that he has the gun, aid him in committing that armed robbery, then they are all treated alike. They are all charged as what we call the principals, accessories.

"*The Defendant:* I plead guilty.

"*The Court:* Mr. Wurtz, has anyone promised you any leniency or told you that the judge would go easier on you if you pleaded guilty than he would if you had a trial and were found guilty?

"*The Defendant:* No, Your Honor.

"*The Court:* No one—has anyone made any promises to you?

"*The Defendant:* No, Your Honor.

"*The Court:* Has anyone told you that they would talk to the judge and that if you pleaded guilty they would ask him to go easier on you?

"*The Defendant:* Not in that sense.

"*The Court:* Well, has any person in any sense, in any way at all, led you to believe that the court would be easier on you if you pleaded guilty than if you were tried by a jury and found guilty?

"*The Defendant:* No, Your Honor.

*"The Court:* Has anybody threatened you in any way?

*"The Defendant:* No, Your Honor.

*"The Court:* Has anybody mistreated you in any way?

*"The Defendant:* No, Your Honor.

*"The Court:* I want to say this further, Mr. Wurtz, if you want to talk to me alone in just the presence of the court officer here, I will talk to you alone.

*"The Defendant:* If you wish to, Your Honor.

*"The Court:* If you wish me to I will, you have that right. I will be glad to discuss the matter alone with you if you would like to do that.

*"The Defendant:* I would.

*"The Court:* You would like to?

*"The Defendant:* Yes, Your Honor.

*"The Court:* All right. (It is now 18 minutes after 9) (Defendant stepped into the judge's chambers.) 9:24 o'clock a.m. (Court continued.)

*"The Court:* I have been talking with the defendant in the office in private with only the court officer present. No regular deputy sheriff or prosecutor were present, and after talking to the defendant it appears to the court that his plea is free and voluntary; that there have been no threats of any kind; no promises of any kind. I am, of course, convinced that he understands the nature of the offense. So the plea of guilty will be accepted. Defendant also stated very freely that he has not been mistreated in any way by any person, sheriff's deputy, sheriff, police officer, or anyone else. That is true, Mr. Wurtz?

*"The Defendant:* Yes, Your Honor.

*"The Court:* You have been treated very well by everyone?

*"The Defendant:* Yes.

*"The Court:* Plea will be accepted and will be committed without bond. Sentence will be set for Thursday, October 10, at 9:00 in the morning, 9:00 a.m."

The record on arraignment does not show the conversation which took place between the defendant and the trial judge in chambers. At the February 4, 1963 hearing, on the motion for a new trial, the judge indicated his recollection of this conversation:

*"The Court:* Well, when I talked to him alone my memory is this—he took this attitude—'No, I don't want a trial. I don't want an attorney. I broke the law. I want to be punished'. Now he took that attitude; that was in general his attitude".

In Michigan, any person charged with a felony has the right to legal counsel before being required to plead at arraignment, by virtue of GCR 1963, 785.3. Its predecessor, Court Rule No 35A (1945), guaranteed this same right at the time of the Wurtz arraignment. The first issue this court must resolve is whether the trial judge complied with the provisions of this rule. The relevant provisions are as follows:

"Criminal Procedure—Arraignment and Sentencing.

In every prosecution wherein the accused is charged with a felony the trial court shall conform to the following practice:

Sec. 1. Arraignment. If the accused is not represented by counsel upon arraignment, before he is required to plead the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. If the accused states he will procure counsel or requests that counsel be appointed, a reasonable time thereafter shall be allowed for counsel to consult with the accused before his plea shall be taken.

Sec. 2. Imposing sentence. If the accused pleads guilty, after such plea and before sentence the court

shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted."*

The record shows that the trial judge fairly and completely explained to the defendant his right to counsel. However, it is immediately apparent from the trial record that the defendant was not told of the possible length of prison term that could be imposed for the crime of armed robbery. The difficult question presented here is whether the trial judge properly informed the defendant of the consequences of his plea, as was required by Court Rule No 35A, § 2 (1945).

The application of this court rule is discussed in *People* v. *Bumpus* (1959), 355 Mich 374, 379:

"Both our statutes and our court rules, quoted above, require that upon a plea of guilty to an information, the judge shall satisfy himself that the plea was made freely, with knowledge of its consequences, and without undue influence or promise of leniency. The form and manner of this examination by the judge has not been prescribed but is left to the discretion of the judge, to be exercised by him in the manner best suited to the parties and the offense."

See, also, *People* v. *Reed* (1965), 1 Mich App 60.

The trial judges in Michigan are not bound to the recitation of any standardized formula to give fair

---

* Court Rule No 35A (1945) was added June, 1947. 318 Mich xxxix.

treatment to a defendant making a plea of guilty.
The record on arraignment shows that the defendant
was aware of the fact that he would be punished by
imprisonment as a consequence of his plea of guilty:

"*The Court:* Well, has any person in any sense,
in any way at all, led you to believe that the court
would be easier on you if you pleaded guilty than
if you were tried by a jury and found guilty?
"*The Defendant:* No, Your Honor."

The nature of the charge was explained to de-
fendant at the beginning of the proceedings. This
Court concludes that the trial judge substantially
satisfied the requirements of Court Rule No 35A
(1945).

Since the arraignment proceeding was conducted
in conformance with the court rule in effect at that
time, the problem of constitutional due process now
presents itself. The basic problem in this case has
two aspects: the first is whether the defendant in-
telligently and understandingly waived his right to
counsel, and second, whether his plea of guilty was
voluntarily, intentionally, and understandingly
made. The instant case is distinguishable from the
following cases, in each of which the lower court
record failed to show that the defendant was ad-
vised of his right to counsel: *White* v. *Maryland*
(1963), 373 US 59 (83 S Ct 1050, 10 L ed 2d 193);
*Carnley* v. *Cochran* (1962), 369 US 506 (82 S Ct 884,
8 L ed 2d 70); *Pennsylvania, ex rel. Herman,* v.
*Claudy* (1956), 350 US 116 (76 S Ct 223, 100 L ed
126); *Uveges* v. *Pennsylvania* (1948), 335 US 437
(69 S Ct 184, 93 L ed 127).

Defendant places much reliance upon *Von Moltke*
v. *Gillies* (1948), 332 US 708, 724 (68 S Ct 316, 323,
92 L ed 309, 321) in which Justice Black, speak-
ing for himself and three of his colleagues, stated:

"The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid, such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

This opinion does not set forth a doctrine of constitutional law binding in every respect upon the States through the 14th Amendment, for two reasons: first, it does not express a majority viewpoint, and second, the matter adjudicated was a criminal prosecution in a Federal court.

Defendant also directs the attention of this Court to *People* v. *Whitsitt* (1962), 366 Mich 609, 614, which quotes at some length the opinion of Justice Black in *Von Moltke* v. *Gillies, supra.* The sparse record in *Whitsitt* contrasts significantly with the careful explanation and examination made by the trial judge at the arraignment of Erwin Wurtz. The failure of the trial judge in *Whitsitt* to inform defendant of his right to counsel before requiring him to plead, not only distinguishes it from the instant case but also indicates that *People* v. *Whitsitt* does not necessarily adopt every clause quoted from *Von Moltke* v. *Gillies, supra,* as a rule of Federal or State constitutional law.

"Generally in criminal cases, the defendant's surprise as to the severity of sentence imposed after a plea of guilty, standing alone, is not such mani-

fest injustice as to require vacation of the judgment and permission to withdraw a plea of guilty." *United States* v. *Parrino* (CCA 2, 1954), 212 F2d 919, 921, cert den 348 US 840 (75 S Ct 46, 99 L ed 663).

This Court concludes that defendant suffered no violation of due process from the manner in which the arraignment was conducted, and that the trial judge made a "penetrating and comprehensive examination of all the circumstances" under which Wurtz entered his plea. *Von Moltke* v. *Gillies, supra.*

Lastly, defendant also attacks the validity of his waiver of counsel and his plea of guilty by alleging that he was not mentally competent at the time of his arraignment. At the hearing on the motion for a new trial, counsel for the defendant produced a witness, expert in psychiatry, Dr. Ira M. Altschuler, who examined the defendant on one occasion for over an hour, on January 5, 1963. Based upon this examination and the fact that the defendant attempted suicide a few months after his conviction, this witness expressed the opinion that, at the time of his arraignment, the defendant was in a state of depression and highly suggestible, and that he was apathetic and indifferent to any defense of himself.

On the other hand, the prosecuting attorney presented another psychiatrist, Dr. John C. Pollard, who was associated with the psychiatric staff of the State prison of southern Michigan between July and December, 1958. Dr. Pollard testified that he had several contacts with the defendant on both an individual and group basis. This witness stated that he could not, with reasonable medical certainty, state what the mental condition of the defendant was at the time of the commission of the crime because he was of the opinion that the degree of accuracy

which an evaluation can have is related to the period of time that has elapsed between an incident and the evaluation. At its best, the psychiatric testimony, taken as a whole, is inconclusive as to the state of mind of the defendant at his arraignment.

This court concludes that no reversible error was committed in the denial of defendant's motion for a new trial because defendant has failed to show that his waiver of counsel and plea of guilty, voluntary, informed, and intentional on the face of the record, were the result of fear, fraud, ignorance, duress, compulsion, or unfairness. *People* v. *Zaleski* (1965), 375 Mich 71.

The judgment of the trial court is affirmed.

T. G. KAVANAGH, P. J., and QUINN, J., concurred.